PRICE, Judge.
This suit was brought to recover the sum of $1,200.00 allegedly due the plaintiff, Jefferson Manufacturing Company, Inc., by the defendants, Bayou Shoppe and Jerry Mehl and William Everitt, the individuals operating this business as a partnership. The indebtedness sought to be collected represented the balance due for merchandise sold and delivered to defendants, consisting of a quantity of men’s slacks shipped to defendants on September 20, 1965, and received by them on September 30, 1965.
Defendants had placed an order with plaintiff’s sales representative on March 1, 1965, for the purchase of a quantity of men’s slacks amounting to the sum of $1,639.90. The purchase order form contained shipping directions and following the instructions for shipping were the words “about August 25”.
*914 The slacks were shipped in two cardboard cartons by motor freight. Defendants did not unpack the two cartons when they received them, but on October 6, 1965, placed them in the hands of Red Ball Motor Freight, Inc. to be shipped back to the plaintiff C.O.D.
One of the cartons was received by plaintiff, and a credit memorandum was issued allowing defendant credit for the merchandise returned in that carton. The other carton was apparently lost in transit and was never received by plaintiff.
Defendants in their answer contend that plaintiff was not entitled to recover because of its failure to fulfill the contract within the time specified. They contend that time was of the essence as the business they conduct is a men’s wearing apparel shop with a substantial portion of its sales being made to college and school boys who purchase very early in the fall. Defendants contend that the phrase on the purchase order saying “about August 25”, should be construed to mean the goods must have been shipped by that date or plaintiff would have been in default under the contract.
Defendants filed a third party demand against the third party defendant, Red Ball Motor Freight, Inc., alleging that should they be cast in judgment, they should then have judgment against the common carrier for the value of the merchandise lost while in transit.
The third party defendant, Red Ball Motor Freight, Inc., filed a motion for a summary judgment alleging that the merchandise was delivered to it on October 6, 1965, and a Uniform Straight Bill of Lading was issued by it on this date signifying “The Bayou Shoppe” as shipper. Red Ball further alleges that included in the provisions of the Bill of Lading is the agreement that the shipment is subject to the terms and provisions of the Carrier’s Bill of Lading as filed with the Interstate Commerce Commission.
Section 2(b) of this Uniform Bill of Lading contains the following provision relative to the period of time within which notice of claim may be filed:
“Sec. 2(b) As a condition precedent to recovery, claims must be filed in writing with the receiving or delivering carrier, or carrier issuing this bill of lading, or carrier on whose line the loss, damage, injury or delay occurred, or carrier in possession of the property when the loss, damage, injury or delay occurred, within nine months after delivery of the property * * * or, in case of failure to make delivery, then within nine months after a reasonable time for delivery has elapsed; and suits shall be instituted against any carrier only within two years and one day from the day when notice in writing is given by the carrier to the claimant that the carrier has disallowed the claim or any part or parts thereof specified in the notice. Where claims are not filed or suits are not instituted thereon in accordance with the foregoing provisions, no carrier hereunder shall be liable, and such claims will not be paid.”
It is further contended by the carrier that no formal claim was received by it until September 13, 1966, when a letter was received from defendants’ attorney. This claim was filed more than nine months after the delivery of the shipment on November 29, 1965, therefore, the carrier alleges that it is not liable for the loss.
Defendant contends that the common carrier became aware of the shortage on October 14, 1965, while the goods were under its control and in transit, as the following notation was made on the Way Bill, to-wit:
“Checks 1 ctn short from Red Ball Don (or Dan) 10-14-65”
It is defendants’ position that this notation was made by an employee of Red Ball or a connecting carrier, therefore, they contend that Red Ball had knowledge *915 of the loss which constituted an exception to the requirement of a written claim within nine months after delivery as required by Section 2(b) of the Uniform Bill of Lading.
The district court rejected the motion for summary judgment. After trial on the merits judgment was rendered in favor of plaintiff, Jefferson Manufacturing Company, and against the defendants, Bayou Shoppe, Jerry Mehl and William Everitt, for the sum of $1,200.00 with 5% interest from October 1, 1965, on the principal demand. Judgment was also rendered on the thrid party demand in favor of Bayou Shoppe and its owners against Red Ball Motor Freight, Inc. for the same amount.' A motion for a new trial was granted to correct the judgment to allow interest at 5% from September 7, 1965, only, this being the date of judicial demand.
From these judgments third party defendant, Red Ball Motor Freight, Inc., and Bayou Shoppe, et al., have appealed.
The merchandise involved in this suit was ordered to replenish the defendants' stock in trade for the coming fall and winter season. We do not feel that delivery of this type of merchandise at the end of the month of September would be unreasonable or too late for that particular season’s business. In any event, there was not sufficient evidence to establish that there was a positive understanding that the goods would be shipped or delivered by August 25th of that year.
The defendants accepted delivery of the merchandise from the common carrier and at that moment the sale was completed and title became vested in defendants.
Defendants attempted to effect a dation en paiement under the'articles contained in Chapter 13 of the Louisiana Civil Code by shipping the merchandise purchased back to the seller. Therefore, the risk of loss or damage to the merchandise until such time that it might have reached the plaintiff was the responsibility of the defendants.
The district court, in its reasons for judgment in favor of the plaintiff in the third party demand against the common carrier, Red Ball Motor Freight, Inc., relied on the cases of Loveless v. Universal Carloading & Distributing Co., 225 F.2d 637 (10 Cir., 1955), and Hopper Paper Co. v. Baltimore & O. R. Co., 178 F.2d 179 (7 Cir., 1949). In each of these cases the court found that the knowledge and actions of the carrier were such that they constituted a sufficient claim in writing to satisfy the requirement of notice under Section 2(b) of the Uniform Bill of Lading.
In the later cases of Atlantic Coast Line Railroad Co. v. Pioneer Products, Inc., 256 F.2d 431 (5 Cir., 1958), and East Texas Motor Freight Lines v. United States, 239 F.2d 417 (5 Cir., 1956), the Fifth Circuit Court of the United States Court of Appeals held that actual knowledge on behalf of the carrier of loss or damage will not alleviate the filing of a written claim by the shipper setting forth his claim for losses sustained within 9 months after delivery in compliance with the Interstate Commerce Act, 49 U.S. C.A. § 1 et. seq.
The court in the case of East Texas Motor Freight Lines v. United States of America, supra, had before it a claim for damage to machinery shipped by a common carrier. There ■ the stipulated facts reflected that the carrier sent the shipper an accident report detailing the happening of the accident. In addition a “Report of Loss or Damage to Freight Inspected after Delivery”, made by an official of a connecting carrier, was sent to the shipper. The shipper did not file a claim until more than nine months after the delivery date. The Fifth Circuit in reversing the district court’s holding for the shipper used the following language:
“This knowledge acquired by the carrier does not, in our opinion, have the effect of releasing appellee from the obligation of complying with the provisions as to *916 notice set forth in the contract of carriage.
“Laws in force at the time and place of making of a contract enter into and form a part of it as if they were expressly incorporated in its terms, and a bill of lading is a contract within this rule. Northern Pac. Ry. Co. v. Wall, 1916, 241 U.S. 87, 91-92, 36 S.Ct. 493, 60 L.Ed. 905. The parties to the bill of lading were, therefore, bound by its terms, insofar as they are not inconsistent with the Interstate Commerce Act and applicable court decisions.
* * * *
“Each time the question has been presented to the Supreme Court it has held that the object of the Interstate Commerce Act and of requiring tariffs, contracts and regulations to be filed with the Commission by carriers was to insure uniformity of treatment to shippers with respect to all pertinent aspects of dealings between them and the carriers, and no decisions of that Court are cited to the contrary.
“We applied the notice provision here involved to government shipments in United States v. Chicago, R. I. & P. R. Co., 5 Cir., 1952, 200 F.2d 263, 264, pointing out that this standard clause in commercial bills of lading had as its purpose ‘to provide for the ascertainment of liability before the-means of proof should be lost * * *.’ ” That decision was rested in part on Northern Pac. R. Co. v. Mackie, 9 Cir., 1952, 195 F.2d 641, 643, which involved not only validity of the notice requirement, but the question whether knowledge on the part of the carrier would excuse failure to comply with the provisions of the bill of lading.
# i{s % ifi ‡ ‡
“The case before us is, in our opinion, controlled by the Supreme Court decisions, supra, and we adhere to the principles thus clearly established even if our conclusions should be considered at war with the decisions so relied upon by appellee. [Hopper and Loveless cases] It seems clear that appellee was not entitled to recover the damages claimed by it for the reason that it did not observe the contract requirements as to filing claim, and that the Court below erred in so holding.”
The Hopper and Loveless cases were distinguished by the court and their holdings were found to be limited to the unusual factual situations involved in them.
In the case of Atlantic Coast Line Railroad Co. v. Pioneer Products, supra, the carrier’s freight agent was verbally notified of damage to a shipment at the time of delivery and the carrier’s inspector made a written report to his superior of the damage. No claim was made within the nine month period, however, and the court in finding for the carrier pronounced as follows :
“As to the South Carolina shipment, however, while the evidence in this case takes us to the verge of approving the repudiation of a clear, indeed recognized, liability, the thoroughly considered decision of this court in East Texas Motor Freight Lines v. United States, supra, compels the conclusion that the making of a written claim was an essential to and the failure to make it prevented, recovery.”
 We are construing a federal statute and must be guided by the latest expression of the federal appellate courts in determining its meaning. We, therefore, conclude that the failure of the shipper, Bayou Shoppe, to file its written notice of loss with the carrier, Red Ball Motor Freight, Inc., within the time prescribed by Section 2(b) of the Uniform Bill of Lading relieves the carrier of liability for this loss.
We do not consider the alternate contention of the third party plaintiff that no delivery was ever made, and, therefore, the nine month period did not begin until after a reasonable time for delivery had *917 elapsed, to be well founded. Both cartons were shipped under one bill of lading and a delivery was effected within the meaning of the word “delivery” as used in the Uniform Bill of Lading.
The plaintiff, Jefferson Manufacturing Company, Inc., in answer to defendants’ appeal, asked that the judgment of the district court be amended to provide for interest at 5% per annum from October 1, 1965, until paid. This is 30 days after delivery which is the date that the account became due and owing under the terms of the purchase order and invoices involved. The district court in deciding the motion for a new trial modified its prior judgment to allow legal interest only from the date of judicial demand, which was September 7, 1965.
Article 1938 of the Louisiana Civil Code provides that all debts shall bear interest at the legal rate of 5% per annum from the time they become due, unless otherwise stipulated. The sale in this case was made on terms of net in 30 days as provided in the original purchase order. The price would, therefore, be due and payable at a time 30 days after delivery. Thus, by the provisions of Article 1938 interest in this case would begin on October 1, 1965, delivery having been made on September 30, 1965. This interpretation of Article 1938 has been recognized in the case of Sobel v. R. & D. Distributors, Inc., La.App., 131 So.2d 570 (4th Cir., 1961).
For the foregoing reasons the judgment appealed from is affirmed insofar as it provides for judgment on the principal demand in favor of Jefferson Manufacturing Company, Inc. and against Bayou Shoppe, Jerry Mehl and William Everitt, individually and in solido, in the full sum of $1,200.00 and all costs.
It is hereby amended to provide for legal interest from October 1, 1965, until paid.
The judgment on the third party demand is hereby reversed, and it is ordered that there be judgment in favor of third party defendant, Red Ball Motor Freight, Inc., and against third party plaintiffs, Bayou Shoppe, Jerry Mehl and William Everitt, rejecting the demands of third party plaintiffs against third party defendants at their costs. All costs of this appeal are assessed to defendants and plaintiffs in the third party demand.